Attorney Names Shante' Bostic pro per
Attorneys' Business Address 3913 Wattling St.
City, ST ZIP Code Oakland, CA 94601
Phone | Fax (510) 880-9660
Email hellfrozeforme@proton.me

FILED
JAN 29 2026
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| SHANTE BOSTIC,<br><br>Plaintiff,<br><br>vs.<br><br>T-MOBILE USA, INC.; VERIZON COMMUNICATIONS INC.; APPLE INC.; TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA; LAUGHLIN, FALBO, LEVY & MORESI LLP; and GUITTARD CHOCOLATE COMPANY,<br><br>Defendants. | Case No.: Number 26-CV-00742-LB<br><br>SUPPLEMENTAL CIVIL RICO |

I reserve the rights, legally permitted to add any other party as more information is available.

January 29 2026.

Shante' Bostic

Shante Bostic pro per

Case No.: 26-cv-00742-LB

FIRST SUPPLEMENTAL COMPLAINT ADDING CIVIL RICO CLAIMS

I. NATURE OF SUPPLEMENTAL COMPLAINT

1. Plaintiff SHANTE BOSTIC hereby supplements the original Complaint filed in this action to add claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968. This supplemental complaint arises from the same core facts alleged in the original Complaint and adds Defendants TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, LAUGHLIN, FALBO, LEVY & MORESI LLP, and GUITTARD CHOCOLATE COMPANY.

2. Plaintiff will be submitting additional evidence in support of these claims through subsequent filings.

II. ADDITIONAL DEFENDANTS

3. Defendant TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA is a Connecticut corporation that provides workers' compensation insurance. Principal

corporate address: One Tower Square, Hartford, CT 06183. Service of process may be effected on Travelers at its registered agent: Corporation Service Company, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833.

4. Defendant LAUGHLIN, FALBO, LEVY & MORESI LLP (LFLM) is a California limited liability partnership that provides legal representation to employers and insurance carriers in workers' compensation matters. Principal business address: 220 Montgomery Street, Suite 888, San Francisco, CA 94104. Service may be effected at this address.

5. Defendant GUITTARD CHOCOLATE COMPANY is Plaintiff's employer and the entity for which Plaintiff was working when injured. Principal business address: 10 Guittard Road, Burlingame, CA 94010. Service may be effected at this address.

## III. THE RICO ENTERPRISE

6. Plaintiff alleges that Defendants Travelers, LFLM, Guittard, Apple, T-Mobile, and Verizon (collectively, the "Enterprise") associated in fact for the common purpose of defrauding Plaintiff of workers' compensation benefits in Workers' Compensation Appeals Board Case No. ADJ19948405.

7. The Enterprise conducted its affairs through a pattern of racketeering activity including wire fraud, tampering with witnesses and evidence, and unlawful interception of communications, all designed to deny Plaintiff legally mandated workers' compensation benefits following Plaintiff's workplace injury on September 13, 2024.

## IV. PATTERN OF RACKETEERING ACTIVITY

### A. Motive and Context

8. Following Plaintiff's workplace injury on September 13, 2024, Defendants engaged in an orchestrated scheme to deny and delay workers' compensation benefits. The scheme included hiring an excessive number of investigators to surveil and intimidate Plaintiff and her minor child, unlawfully accessing Plaintiff's digital accounts, tampering with evidence, and manipulating the administrative process.

9. Plaintiff and her minor child were subjected to constant surveillance by approximately 10-15 investigators at any given location. The surveillance was so pervasive and intimidating that both Plaintiff and her child developed severe anxiety. Investigators followed Plaintiff's child even when Plaintiff was not present. Plaintiff has filed three police reports documenting this harassment.

B. Wire Fraud (18 U.S.C. § 1343)

10. Between September 2024 and January 2026, the Enterprise utilized unauthorized access to Plaintiff's iCloud, email accounts, and other digital accounts to intercept privileged attorney-client communications, medical records, and Workers' Compensation Appeals Board filings.

11. Plaintiff identified metadata and account activity showing that Travelers adjusters and LFLM attorneys possessed medical files and legal documents that were never legally served or released. These files originated from unauthorized access to Plaintiff's accounts, including the creation of a non-existent "iDrive" account through account takeover techniques.

12. Despite Plaintiff's repeated notifications to Apple, T-Mobile, and Verizon that her accounts had been compromised, these Defendants failed to secure the accounts and instead maintained administrative access that allowed the Enterprise to continue monitoring Plaintiff's communications and activities.

C. Tampering with Evidence (18 U.S.C. § 1512)

13. On October 11, 2025, Plaintiff's residence was burglarized (Oakland Police Department Report). The burglary specifically targeted Workers' Compensation case files and documents. No other valuables were taken.

14. Prior to the October 11, 2025 break-in, Plaintiff noticed that papers in her home were being removed, edited, and replaced. The most significant evidence tampering involved the critical denial letter related to the Labor Code § 5402(b) 90-day deadline issue that is central to Plaintiff's case.

15. The Enterprise removed Workers' Compensation legal files to impede Plaintiff's ability to prove the Labor Code § 5402(b) presumption of compensability and to obstruct the administrative proceedings.

D. Interception of Communications (18 U.S.C. § 2511)

16. The Enterprise maintained unauthorized access to Plaintiff's telecommunications accounts, email, social media (Facebook, Instagram), banking accounts, utility accounts (PGE), and internet service.

17. Plaintiff discovered evidence of administrative control over all her accounts. Her daughter's Apple desktop computer (now pawned due to financial hardship) showed admin-level control over Plaintiff's emails, banks, and other critical accounts.

18. Plaintiff detected AirTags and tracking devices in her home using her Android phone. These tracking devices allowed the Enterprise to monitor Plaintiff's real-time location and activities.

19. On or about October 10, 2025, Plaintiff informed defense counsel that she would be using social media to publicly document the harassment and surveillance. Shortly thereafter, Plaintiff lost control of her social media accounts, demonstrating the Enterprise's ability to monitor communications and take immediate action.

E. T-Mobile Account Takeover and Financial Fraud

20. Plaintiff maintained her T-Mobile phone number (510-285-7300) for over 15 years without incident until this workers' compensation case began. The Enterprise executed a SIM swap attack and took control of this number.

21. Beginning in October 2024, Plaintiff discovered multiple duplicate charges on her T-Mobile account. Plaintiff was forced to pay the same bill up to three times per month to maintain service.

22. Despite providing bank statements from Bank of America confirming that all payments had cleared and that there were no returned transactions, T-Mobile repeatedly deactivated Plaintiff's service, assessed disconnection fees, and required in-person store payments.

23. In late November 2024, Plaintiff paid approximately $1,200 to restore service. Service was terminated again the following day.

24. T-Mobile set up automatic payments on Plaintiff's account without authorization and attempted withdrawals before the due date. An old phone number belonging to Plaintiff's daughter (510-838-5078) remained attached to the account despite repeated requests for removal.

25. By November 2025, Plaintiff was forced to allow the phone service to disconnect because T-Mobile refused to secure the account or remove unauthorized users. The phone number remains active on T-Mobile's system despite disconnection, demonstrating continued unauthorized control.

F. Verizon Account Takeover

26. Plaintiff obtained Verizon service to escape the compromised T-Mobile account. Shortly after establishing Verizon service, Plaintiff lost control of this account as well.

27. When Plaintiff contacted Verizon on December 15, 2025, Verizon would not provide Plaintiff with her own account number. When Plaintiff finally received a bill, it arrived late and service had already been terminated.

G. Medical Device Disruption and Child Endangerment

28. Plaintiff's minor child is a Type 1 diabetic who relies on Bluetooth-enabled medical devices for life-sustaining glucose monitoring.

29. The Enterprise's unauthorized access to Plaintiff's Apple accounts and devices caused disruption to the child's medical device connectivity, creating a serious risk to the child's health and safety.

30. On at least one occasion, attempts to reset Plaintiff's compromised Apple account caused the child's medical device connectivity to fail completely, leaving Plaintiff and her child without necessary medical device support.

H. Mail Tampering and Financial Sabotage

31. Plaintiff's mail has been systematically tampered with throughout this case. QME panel lists, checks, and a longshoreman hire card for a family member have all gone missing from Plaintiff's mail.

32. Plaintiff placed mail on hold with USPS multiple times. The hold was repeatedly removed without authorization, allowing the Enterprise continued access to Plaintiff's mail. Plaintiff has reported this to OIG USPS and the DOJ.

33. Plaintiff's mail key went missing near Christmas 2025. When Plaintiff met her landlord to obtain a replacement key, an investigator was observed sitting in a nearby car.

34. During this encounter, the landlord attempted to have Plaintiff hold a heavy can of cookies, despite knowing about Plaintiff's spinal injury and physical limitations. The landlord then stated he needed immediate access to Plaintiff's residence. Plaintiff subsequently discovered that all previous break-ins showed no signs of forced entry, suggesting the landlord may be cooperating with the Enterprise.

35. Plaintiff's bank accounts show unauthorized transactions. Plaintiff holds no real control over any of her financial or digital accounts. Plaintiff reported these issues via IC3 (FBI Internet Crime Complaint Center) and to the District Attorney.

I. Workers' Compensation Process Manipulation

36. On September 13, 2024, Plaintiff suffered a workplace injury when she was struck hard on her left side by a co-worker whose name Plaintiff did not know. Plaintiff was unable to complete her work day due to pain and was sent to Concentra medical facilities beginning September 14, 2024.

37. Between September 14, 2024 and October 3, 2024, Plaintiff was sent to over four Concentra physicians. Despite Plaintiff's severe pain, Concentra physicians repeatedly cleared Plaintiff for full duty work.

38. On October 3, 2024, a Concentra physician performed Plaintiff's first imaging and told Plaintiff everything was normal, while simultaneously documenting disc narrowing at C6-C7 in the medical report.

39. During the October 3, 2024 appointment, Defendants violated Plaintiff's privacy by allowing a chaperone into the examination room against Plaintiff's explicit refusal.

40. On October 4, 2024, Plaintiff went to Kaiser Emergency in San Leandro where a physician diagnosed nerve impingement without imaging. When Plaintiff attempted to return to Concentra, they refused to see her because their physician had released her to full duty.

41. Plaintiff obtained an MRI in mid-November 2024 (approximately November 19, 2024) which confirmed spinal stenosis.

42. Travelers delayed sending medical reports to Plaintiff and violated the 90-day deadline under Labor Code § 5402(b) for determining compensability. The claim was delayed without any stated factual inconsistencies, despite Plaintiff's repeated requests for explanation.

43. Defendants scheduled a QME (Qualified Medical Examiner) appointment before denying the claim, while the claim was still on delay status. Defendants failed to provide Plaintiff fair opportunity to select her own physicians after sending her to over four Concentra doctors.

44. Plaintiff's first attorney worked against her interests. When defense counsel illegally blocked Plaintiff's legally-set QME appointment, her attorney was prepared to allow defense to send false medical records to QME Dr. Strudwick. Plaintiff was forced to fire this attorney to prevent submission of fraudulent records.

45. Plaintiff has attempted to allow defense to set new QME appointments, but every QME panel list sent to Plaintiff went missing from her mail.

46. Defense counsel attempted to bribe Plaintiff with $5,000 to settle the case. Plaintiff declined. This occurred at a hearing on or about October 7, 2025, at which Plaintiff's employer admitted to illegally using Plaintiff's sick time. Deputy Commissioner Meenakshi Malik observed the attempted bribe and took no action.

J. Employment Retaliation and Benefit Termination

47. On May 1, 2025, Plaintiff's employer (Guittard) terminated all medical benefits for Plaintiff and her Type 1 diabetic child, despite a union contract preventing such termination.

48. Plaintiff had completed all necessary steps to maintain coverage. A physician had extended the benefits, but Guittard ignored this and terminated coverage anyway.

49. Plaintiff and her child were forced to go months without medical insurance. They now rely on Medi-Cal, where Plaintiff's child receives significantly reduced medical care compared to her previous coverage.

50. Plaintiff's current medical provider (Kaiser) has delayed her care and filed false grievances claiming Plaintiff complained about pain medication when she only filed one grievance. Kaiser also falsely claimed Plaintiff's mother called on her behalf, which is a lie.

51. A new Kaiser physician who has been Plaintiff's doctor for over 15 years made it extremely difficult for Plaintiff to be heard. Another new doctor is attempting to taper Plaintiff off Norco, which Plaintiff has taken responsibly for over 12 years for a prior injury (broken femur from car accident 20 years ago). Plaintiff now experiences more severe pain from the spinal stenosis but receives no adequate treatment plan.

52. Plaintiff's employer failed to pay sick time that Plaintiff requested for months. At the October 7, 2025 hearing, the employer admitted to illegally using Plaintiff's sick time.

53. A DLSE (Division of Labor Standards Enforcement) claim Plaintiff filed five years ago was suddenly brought into play during this workers' compensation case.

54. Plaintiff misses many work days at her second job as a longshoreman due to her untreated spinal stenosis, causing ongoing financial hardship.

K. Evidence of Judicial Conflict and Bias

55. Plaintiff discovered that Judge Hillary Allyn holds pro tem status without proper disclosure to Plaintiff. This information was not disclosed despite its relevance to Plaintiff's case.

56. Plaintiff discovered that Judge Sharma Wilson is listed on the California Secretary of State records as a debtor for LFLM law firm, which is defense counsel in this case. This creates a clear conflict of interest that was not disclosed.

57. On December 24, 2025, Plaintiff had a hearing before Judge Wilson that was supposed to be sent to pre-trial. Plaintiff informed Judge Wilson that the case was with reconsideration. Judge Wilson stated she could still rule despite the pending reconsideration.

58. Plaintiff filed for disqualification of the judges and received a letter dismissing the request. The letter had no postmark date, making it impossible to determine its origin. This is consistent with the pattern of mail tampering throughout this case.

59. Much of the mail from defense counsel looks very similar to mail from state agencies, suggesting tampering. These documents often lack proper postmark dates. Verizon mail showed similar characteristics.

L. Related Legal Actions

60. Plaintiff discovered a class action lawsuit in San Mateo County that had been proceeding without Plaintiff's consent. The workers' compensation defense attorney appeared to have knowledge of this class action.

61. This class action appears to be part of the broader scheme to manipulate Plaintiff's legal rights and remedies.

## V. RICO CAUSE OF ACTION

COUNT ONE: Violation of 18 U.S.C. § 1962(c) Conducting Enterprise Affairs Through Pattern of Racketeering

62. Plaintiff realleges and incorporates by reference all preceding paragraphs.

63. Defendants Travelers, LFLM, Guittard, Apple, T-Mobile, and Verizon constitute an "enterprise" within the meaning of 18 U.S.C. § 1961(4)—an association-in-fact of individuals and entities with an ongoing organization that functions as a continuing unit for the common purpose of denying Plaintiff her lawful workers' compensation benefits.

64. Each Defendant participated in the conduct of the Enterprise's affairs through a pattern of racketeering activity, including:

a. Wire Fraud (18 U.S.C. § 1343) - Multiple acts of unauthorized access to electronic accounts and communications

b. Witness/Evidence Tampering (18 U.S.C. § 1512) - Break-ins, document theft, and destruction of evidence

c. Interception of Communications (18 U.S.C. § 2511) - Ongoing monitoring and surveillance

65. These predicate acts were related to each other, shared common purposes and participants, occurred over an extended period from September 2024 through the present, and constitute a "pattern of racketeering activity" under 18 U.S.C. § 1961(5).

66. The Enterprise operated to:

a. Deny Plaintiff's workers' compensation claim despite clear medical evidence of injury

b. Prevent Plaintiff from effectively presenting her case through evidence destruction and witness intimidation

c. Financially exhaust Plaintiff through fraudulent billing and account manipulation

d. Monitor Plaintiff's legal strategy and communications to gain unfair advantage

e. Obstruct the administrative process through judicial conflicts and procedural manipulation

67. As a direct and proximate result of Defendants' RICO violations, Plaintiff has suffered:

a. Loss of workers' compensation benefits (temporary disability, medical treatment)

b. Loss of health insurance for herself and her diabetic child

c. Loss of income from missed work at her longshoreman job

d. Fraudulent charges and fees totaling thousands of dollars

e. Costs of replacing compromised accounts and services

f. Severe emotional distress and anxiety

g. Risk to her child's health due to medical device disruption

## VI. DAMAGES AND RELIEF SOUGHT

68. Plaintiff seeks the following relief under 18 U.S.C. § 1964(c):

A. Treble Damages for: - Lost workers' compensation benefits (temporary disability payments from September 2024 to present) - Illegally withheld sick time - Lost wages from longshoreman employment - Fraudulent charges and fees (T-Mobile, Verizon, and other accounts) - Medical expenses for Plaintiff and child due to loss of insurance - Cost of account remediation and security measures

B. Injunctive Relief: - Immediate order requiring Apple, T-Mobile, and Verizon to lock all accounts and implement port/SIM swap freeze - Order requiring all Defendants to preserve all logs, records, and communications related to Plaintiff - Order requiring production of all account access logs, surveillance records, and communications

C. Forensic Examination: - Court-ordered forensic audit of defense counsel's devices and accounts to trace unauthorized access to Plaintiff's files and the creation of the fraudulent "iDrive" account - Forensic examination of T-Mobile and Verizon account records to identify unauthorized access and control

D. Punitive Damages: - For willful, malicious, and oppressive conduct designed to deprive Plaintiff of her legal rights

E. Costs and Attorney's Fees: - As permitted under 18 U.S.C. § 1964(c)

F. Pre- and Post-Judgment Interest

G. Such other and further relief as the Court deems just and proper

VII. RELATIONSHIP TO ORIGINAL COMPLAINT

69. The RICO claims alleged herein arise from the same nucleus of operative facts as the original Complaint. The original Complaint alleged that Defendants T-Mobile, Verizon, and Apple failed to secure Plaintiff's accounts and facilitated unauthorized access. This Supplemental Complaint demonstrates that such access was part of an organized enterprise involving additional defendants with the specific purpose of defrauding Plaintiff of workers' compensation benefits.

70. The RICO claims provide additional federal jurisdiction and remedies beyond those available under the Computer Fraud and Abuse Act, Stored Communications Act, and state law claims alleged in the original Complaint.

VIII. JURY DEMAND

71. Plaintiff demands trial by jury on all claims so triable.

IX. VERIFICATION

I, SHANTE BOSTIC, declare under penalty of perjury under the laws of the United States that I have read the foregoing First Supplemental Complaint and that the facts stated therein are true and correct to the best of my knowledge, information, and belief.

Dated: January 29, 2026

Respectfully submitted,

SHANTE BOSTIC Pro Se Plaintiff Shante Bostic Oakland, CA 94601Phone: 510-880-9660

Email:hellfrozeforme@proton.me

CERTIFICATE OF SERVICE

I hereby certify that on the date below I will serve a copy of this First Supplemental Complaint on all Defendants' registered agents and counsel of record in accordance with the Federal Rules of Civil Procedure.

Dated: January 29, 2026

01/29/2026